United States District Court
For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7    SEAN HOWARD,

8              Plaintiff,                    No. C 13-1111 PJH

9    v.                                      **ORDER**

10   OCTAGON, INC.,

11             Defendant.

     _____/

12

13         The motion of defendant Octagon, Inc. ("Octagon") for an order dismissing, staying,

14   or transferring the above-entitled action, and the motion of plaintiff Sean Howard for an

15   order staying arbitration, came on for hearing before this court on July 24, 2013.  Octagon

16   appeared by its counsel Danielle Ochs and Timothy L. Reed, and plaintiff appeared by his

17   counsel Adam J. Tullman.  Having read the parties' papers and carefully considered their

18   arguments and the relevant legal authority, the court hereby GRANTS Octagon's motion in

19   part and DENIES it in part, and DENIES plaintiff's motion, as follows.

20                              **BACKGROUND**

21         Plaintiff was employed by Octagon from August 2006 until March 2013, pursuant to

22   a letter agreement ("the Agreement") dated July 10, 2006.  Octagon is an agency that is in

23   the business of sports/talent management, marketing, public relations, and representation

24   of and consulting to athletes and "personalities."  Among other things, Octagon represents

25   former and current football players, and as part of that representation, negotiates playing

26   contracts, organizes and manages endorsements, speaking, and other opportunities, and

27   provides career management.  Plaintiff was employed as a sports agent in Octagon's

28   "Football Division."

1   The July 10, 2006 Agreement included a number of provisions that would become

2   effective in the event of the termination of employment by either plaintiff or Octagon.  Of

3   particular significance here is ¶ 7 of the Agreement, which provided that following the

4   period of plaintiff's employment with Octagon, plaintiff would pay Octagon, "as

5   consideration for [Octagon] having funded the development of [plaintiff's] relationship with

6   any of [Octagon's] clients," certain percentages of "any and all fees or other compensation

7   received directly or indirectly by [plaintiff] in connection with any such client," with the

8   amounts depending on whether the contracts were renewals or were new.

9   Specifically, if the contracts involved "extensions, modifications, and/or renewals,"

10  after the termination of plaintiff's period of employment, of contracts that previously existed

11  for Octagon's clients during that employment period, plaintiff would pay 100% for the first

12  and second years following the employment period, 70% for the third year, 50% for the

13  fourth year, 35% for the fifth year, and 20% for the sixth year.  If the contracts were "new" –

14  that is, entered into by such Octagon clients after plaintiff's period of employment – plaintiff

15  would pay 100% for the first and second years, 50% for the third year, 40% for the fourth

16  year, and 30% for the fifth year.  Agreement ¶ 7.

17  In addition, the Agreement included an arbitration requirement, a forum-selection

18  clause, and a choice-of-law provision:

19          All controversies or claims arising out of or relating to this Agreement, or the
        breach thereof, shall be settled by arbitration in accordance with the Rules of
20      the American Arbitration Association.  The findings of the arbitrator shall be
        final, binding, and non-appealable.  Judgment upon the award may be
21      entered in any court having jurisdiction thereof.  All legal fees incurred in
        connection with such arbitration will be the responsibility of the non-prevailing
22      party.  This Agreement shall be governed by and construed in accordance
        with the laws of Virginia, USA without regard to its conflicts of laws principles.
23      Venue shall be in Fairfax County, Virginia, USA.

24  Agreement ¶ 17.

25  Plaintiff notified Octagon on March 11, 2013 that he was resigning from his

26  employment.  The following day, March 12, 2013, plaintiff filed the complaint in this action.

27  On March 13, 2013, prior to being served with the complaint, Octagon filed and served a

28  demand for arbitration with the American Arbitration Association ("AAA") in Virginia,

2

United States District Court

For the Northern District of California

1  pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.  The arbitration

2  demand seeks a ruling as to whether Octagon can enforce ¶ 7 of the Agreement.  On

3  March 14, 2013, plaintiff served Octagon with the original complaint in this action.

4      On May 31, 2013, pursuant to stipulation, plaintiff filed a second amended complaint

5  ("SAC"), alleging seven causes of action – five claims for declaratory relief, a claim of unfair

6  and unlawful business practices in violation of California Business & Professions Code

7  § 17200, and a claim for civil penalties under the Private Attorney General Act ("PAGA"),

8  California Labor Code § 2698, et seq.

9      In the first cause of action, plaintiff seeks a judicial declaration that ¶ 4 of the

10  Agreement is void and unenforceable under California Business & Professions Code

11  § 16600 because it prohibits plaintiff from being employed by or contracting with a number

12  of Octagon's competitors for a period of one year following the termination of his

13  employment.  SAC ¶¶ 17-21.

14      In the second cause of action, plaintiff seeks a judicial declaration that ¶ 5 of the

15  Agreement is void and unenforceable under § 16600 because it prohibits plaintiff, for a

16  period of one year, from soliciting or providing services to anyone who was a client or

17  prospective client of Octagon during the last six months of plaintiff's employment,

18  regardless of whether plaintiff had any contact with those clients or prospective clients.

19  SAC ¶¶ 25-28.

20      In the third cause of action, plaintiff seeks a judicial declaration that ¶ 6 of the

21  Agreement is void and unenforceable under § 16600 because it subjects plaintiff to several

22  anticompetitive restrictions following termination of his employment by either party.  SAC

23  ¶¶ 33-35.

24      In the fourth cause of action, plaintiff seeks a judicial declaration that ¶ 7 of the

25  Agreement is void and unenforceable under § 16600 because it imposes anticompetitive

26  restrictions on plaintiff's ability to pursue his business and profession following completion

27  of his employment with Octagon, and that it is unenforceable as a matter of law under

28  Labor Code §§ 221, 229, 300, and 2812.  SAC ¶¶ 40-46.

3

1    In the fifth cause of action, plaintiff seeks a judicial declaration that the arbitration

2 provision in ¶ 17 of the Agreement is procedurally and substantively unconscionable, and

3 therefore unenforceable as a matter of law; and that it is also unenforceable as a matter of

4 law under Labor Code § 221.  SAC ¶¶ 50-54.

5    In the sixth cause of action, plaintiff alleges that Octagon engaged in unfair and

6 unlawful business practices in violation of § 17200, including requiring employees to sign

7 employment contracts containing unfair and illegal provisions such as covenants not to

8 compete, unconscionable arbitration provisions, illegal recoupment of wages, illegal

9 recoupment of business expenses, illegal prohibitions on the discussion of wages, and

10 illegal assignment of wages; and seeking to enforce illegal and unfair provisions against

11 "employees and former employees including [p]laintiff."  SAC ¶¶ 57-60.

12    In the seventh cause of action, plaintiff asserts a claim for PAGA penalties under

13 Labor Code § 2699 for himself and every other similarly aggrieved former and current

14 Octagon employee.  SAC ¶¶ 65-68.  The claim for PAGA penalties is apparently based on

15 allegations elsewhere in the complaint that Octagon violated Labor Code §§ 221, 229, 232,

16 300, and 2802.  See SAC ¶¶ 12-13.

17    Octagon now seeks an order dismissing the first, second and third causes of action

18 pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that there is no case

19 or controversy; and an order dismissing the sixth and seventh causes of action pursuant to

20 Federal Rule of Civil Procedure 12(b)(6), on the grounds that plaintiff cannot state a claim

21 for violation of § 17200, and cannot state a PAGA claim.

22    Octagon also seeks an order dismissing the case for improper venue, pursuant to

23 Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), based on the forum

24 selection clause in ¶ 17 of the Agreement.  In the alternative, Octagon seeks an order

25 transferring the case pursuant to 28 U.S.C. § 1406(a) to the Eastern District of Virginia;

26 and/or an order dismissing the case pursuant to Rule 12(b)(6) for failure to state a claim,

27 because a valid arbitration provision governs the employment Agreement; and/or an order

28 pursuant to 9 U.S.C. § 3 staying further proceedings pending completion of the arbitration.

**United States District Court**
For the Northern District of California

1    Plaintiff opposes Octagon's motion and has also filed a motion seeking an order

2    staying the arbitration pending a determination by this court of the validity of the arbitration

3    provision.

4                                    **DISCUSSION**

5    A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

6        Octagon seeks an order dismissing the first through third causes of action for lack of

7    subject matter jurisdiction, arguing that there is no substantial controversy of sufficient

8    immediacy to justify the issuance of a declaratory judgment.

9        Federal courts are courts of limited jurisdiction, possessing only that power

10   authorized by Article III of the United States Constitution and statutes enacted by Congress

11   pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

12   Federal courts have no power to consider claims for which they lack subject-matter

13   jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412,

14   1415 (9th Cir. 1992).  The burden of establishing that a cause lies within this limited

15   jurisdiction rests upon the party asserting jurisdiction.  Kokkonen v. Guardian Life Ins. Co.

16   of America, 511 U.S. 375, 377 (1994).

17       The Declaratory Judgment Act provides that "[i]n a case or actual controversy . . .

18   any court of the United States . . . may declare the rights and other legal relations of any

19   interested party."  28 U.S.C. 2201(a).  This "actual controversy" requirement is consistent

20   with the Article III requirement to adjudicate only "actual cases or controversies."  See U.S.

21   Const., Art. III, § 2; see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127

22   (2007).  To determine whether an "actual controversy" exists for DJA and Article III

23   purposes, the district court should consider "whether the facts alleged, under all the

24   circumstances, show that there is a substantial controversy, between parties having

25   adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

26   declaratory judgment."  Id. (citation and quotation omitted).

27       The disagreement must be "definite and concrete, touching the legal relations of

28   parties having adverse legal interests"; and must be "real and substantial" and "admi[t] of

                                         5

United States District Court

For the Northern District of California

specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. (citation and quotation omitted). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." Rhoades v. Avon Prods., 504 F.3d 1151, 1157 (9th Cir. 2007)

Octagon asserts that it does not intend to enforce ¶¶ 4, 5, or 6 of the Agreement, and that the first, second, and third causes of action for declaratory relief are therefore moot and should be dismissed. Octagon contends that any judicial declaration would be improper, as it would simply be in the nature of an advisory opinion.

In opposition, plaintiff argues that the first, second, and third causes of action present valid requests for declaratory relief, as each alleges that a provision of the Agreement is void, as a matter of law, pursuant to Business & Professions Code § 16600. Plaintiff claims that these are actual controversies that are ripe for adjudication by this court. Plaintiff contends that while Octagon now claims it does not "intend" to enforce those portions of the Agreement, it can decide at any time in the future to enforce them.

The court finds that the motion must be GRANTED. A representation to a court that a party will not seek to enforce a covenant not to compete completely moots a claim for declaratory relief seeking to invalidate a covenant not to compete. See Landers v. Curran & Connors, Inc., 2006 WL 708948 at *2 (N.D. Cal. March 21, 2006). Here, Octagon's counsel represented to the court, both in its papers filed in support of the present motion, and in open court during the July 24, 2013 hearing, that it does not intend to seek to enforce ¶¶ 4, 5, or 6 of the Agreement. Further, on July 29, 2013, Octagon filed a written Covenant Not To Sue, through which it promises not to take any legal action against plaintiff with respect to ¶¶ 4, 5, or 6 of the Agreement.

Accordingly, the court finds that plaintiff has no basis for asserting that there is an actual controversy between the parties sufficient to support a claim for declaratory relief as to ¶¶ 4, 5, or 6 of the Agreement, and he is thus unable to meet his burden of showing threatened legal action by Octagon.

**United States District Court**
For the Northern District of California

B.      Motion to Dismiss for Failure to State a Claim

Octagon argues that both the sixth cause of action for violation of § 17200 and the seventh cause of action for PAGA penalties must be dismissed for failure to state a claim. A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. Id. at 94. However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59; see also Iqbal, 556 U.S. at 679.

In the sixth cause of action under § 17200, plaintiff identifies the unlawful and unfair business practices at issue as "requiring employees to sign employment contracts containing unfair and illegal provisions including covenants not to compete, unconscionable arbitration provisions, illegal recoupment of wages, illegal recoupment of business expenses, illegal prohibitions on the discussion of wages, and illegal assignment of wages." SAC ¶ 57.

Octagon first argues that the § 17200 claim should be dismissed because the SAC does not allege facts sufficient to show that plaintiff has standing to assert this claim, as he

United States District Court

For the Northern District of California

1    has not suffered an "injury in fact" related to any of the underlying claims.[1]  In addition,

2    Octagon notes that it has agreed not to enforce ¶¶ 4-6 of the Agreement, and argues that

3    the only substantive portions of the Agreement that are at issue are ¶ 7 (declaratory relief

4    concerning future fee sharing) and ¶ 17 (arbitration, forum selection, choice of law).

5    Octagon argues that plaintiff has not explained how he has "suffered injury" or how

6    Octagon's pursuit of a declaration of rights concerning future fee-sharing provisions

7    constitutes an injury in fact.

8        Octagon asserts further that none of the cited sections of the Labor Code support

9    the § 17200 claim.  Labor Code § 221 prohibits employers from collecting any part of

10   "wages" that were "theretofore paid by said employer to said employee."  Labor Code

11   § 229 provides that an individual may maintain an action for the collection of due and

12   unpaid "wages" without regard for the existence of any private agreement to arbitrate.

13   Labor Code § 300 prohibits the "assignment" of wages unless specific conditions are

14   satisfied.  Octagon contends that Labor Code §§ 221, 229, and 300 are inapplicable

15   because plaintiff's claims do not involve "wages" as defined under California law.

16       Under the Labor Code, "wages" include "all amounts for labor performed by

17   employees of every description, whether the amount is fixed or ascertained by the standard

18   of time, task, piece, commission basis, or other method of calculation."  Cal. Lab. Code

19   § 200(a).  That is, an employee's "wages" or "earnings" are "the amount the employer has

20   offered or promised to pay, or has paid pursuant to such offer or promise, as compensation

21   for that employee's labor."  Prachasaisoradej v. Ralphs Grocery Co., Inc., 42 Cal. 4th 217,

22   228 (2007).

23       Paragraph 7 of the Agreement (which is also the subject of Octagon's arbitration

24   petition) refers to payments plaintiff "may" receive in the future after the Employment Period

25   has ended.  As such, Octagon asserts, Labor Code §§ 221, 300, and 229 do not apply and

26   cannot apply as a basis for an unfair competition claim – since they govern "wages" and the

27   _____

28       [1]  This argument appears to be more appropriate for analysis under Rule 12(b)(1) than
     under Rule 12(b)(6).

United States District Court

For the Northern District of California

1   payment of future commissions does not involve the payment of wages.  Octagon asserts

2   further that any claim based on Labor Code § 2802 (reimbursement of business expenses)

3   is inapplicable because plaintiff does not allege that any of his business expenses were not

4   reimbursed.

5       Paragraph 11 of the Agreement provides that plaintiff may not discuss his

6   compensation with any person other than certain specified individuals at Octagon, and his

7   immediate family and professional advisors.  Plaintiff asserts in the "General Allegations"

8   section of the SAC (not in any cause of action) that this provision violates Labor Code

9   § 232 as well as § 7 of the National Labor Relations Act; and that by requiring plaintiff to

10  enter into an employment agreement that violated California law, Octagon committed a

11  misdemeanor and violated Labor Code § 432.5.

12      Octagon argues that plaintiff cannot state a claim for violation of Labor Code § 232

13  or § 432.5, or a claim under § 7 of the NLRA because such claims are moot and/or

14  untimely, given that plaintiff no longer works at Octagon; and that any claim based on Labor

15  Code § 432.5 (which prohibits an employer from requiring an employee to agree to an

16  unlawful term it knows is prohibited) necessarily has expired, based on the applicable

17  three-year statute of limitations.

18      With regard to the PAGA claim, Octagon contends that the claim is insufficiently pled

19  because it does not identify the Labor Code sections upon which it is based, and because

20  none of the underlying Labor Code causes of action survive to support a claim for civil

21  penalties.

22      In opposition, plaintiff argues that he has standing to assert the § 17200 claim based

23  on an "imminent invasion to a protected interest."  He asserts that he faces a demand for

24  money that Octagon claims is due and owing, which could amount to as much as 100% of

25  his earnings for the next two years, and some portion for the two years beyond that.

26  Plaintiff also contends that the arbitration clause is an unlawful business practice; that ¶¶ 4-

27  7 of the Agreement violate § 16600, and provide support for a claim of unlawful and unfair

28  business practices; and that the "clear language" of ¶ 7 of the Agreement violates §§ 221,

9

United States District Court

For the Northern District of California

1   229, 300, and 2802 of the California Labor Code.

2       As for Octagon's argument that the contractual fees received from Octagon's clients

3   or former clients do not constitute "wages" or "expenses" and thus are not controlled by the

4   cited sections of the Labor Code, plaintiff responds that ¶ 7 provides that Octogon can

5   require plaintiff to pay up to 100% of "fees or other compensation" received from those

6   clients after his employment with Octagon ends.  Plaintiff asserts that because the Labor

7   Code defines "wages" as "all amounts for labor performed by employees," any of his future

8   "fees and other compensation" necessarily qualifies as "wages."

9       For example, plaintiff contends, because any such "compensation" would include

10  "wages" he would earn in the future, the prohibition in Labor Code § 300 against

11  "assignment of wages" applies here.  He also asserts that the provision in ¶ 7 regarding his

12  obligation to pay Octagon the specified "fees or other compensation" as "consideration for

13  the Company having funded the development of [his] relationship with any of the

14  Company's clients" can only be interpreted as meaning that Octagon is asserting its right to

15  recoup wages and commissions that plaintiff previously earned.

16      Finally, plaintiff argues that the fact that the PAGA cause of action does not mention

17  the underlying Labor Code violations is unimportant, as it is clear from the rest of the SAC

18  which code sections are being asserted.  Moreover, he argues, his letter to the State of

19  California (required before a PAGA claim can be asserted) states that Octagon violated

20  Labor Code §§ 221, 432.5, and 2802.

21      The court find that the motion must be GRANTED.  First, plaintiff has not established

22  that he has standing to bring a claim under § 17200.  To establish a "case or controversy"

23  within the meaning of Article III, a plaintiff must show an "injury in fact" which is concrete

24  and not conjectural, a causal causation between the injury and defendant's conduct or

25  omissions, and a likelihood that the injury will be redressed by a favorable decision. Lujan

26  v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Allen v. Wright, 468 U.S.

27  737, 751 (1984).

28      Standing is "an essential and unchanging part of the case-or-controversy

10

1  requirement of Article III." <u>Lujan</u>, 504 U.S. at 560.  Standing is not subject to waiver, and

2  must be considered by the court even if the parties fail to raise it.  <u>See United States v.</u>

3  <u>Hays</u>, 515 U.S. 737, 742 (1995).  The burden is on the party who seeks the exercise of

4  jurisdiction in his or her favor to "clearly . . . allege facts demonstrating that he is a proper

5  party to invoke judicial resolution of the dispute."  <u>Id.</u> at 743.

6         A private action for violation of California Business & Professions Code § 17200 may

7  only be brought "by a person who has suffered injury in fact and has lost money or property

8  as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; <u>see also</u> <u>Kwikset</u>

9  <u>Corp. v. Superior Court</u>, 51 Cal. 4th 310, 320-21 (2011) (private standing under

10  § 17200 is now "limited to any person who has suffered injury in fact and has lost money or

11  property as a result of unfair competition") (quotation omitted); <u>Rubio v. Capital One Bank</u>,

12  613 F.3d 1195, 1204-05 (9th Cir. 2010) (UCL requires plaintiff to "show that she has lost

13  'money or property' sufficient to constitute an 'injury in fact' under Article III of the

14  Constitution . . . , and also requires a 'causal connection' between [defendant's] alleged

15  [Section 17200] violation and her injury in fact") (citations omitted).  An absence of facts

16  describing the money or property allegedly lost is fatal to a plaintiff's § 17200 claim.

17  <u>Saldate v. Wilshire Credit Corp.</u>, 711 F. Supp. 2d 1126, 1137 (E.D. Cal. 2010); <u>see also</u>

18  <u>Kwikset</u>, 51 Cal. 4th at 323.

19         As stated above, the claims with regard to ¶¶ 4-6 of the Agreement are dismissed

20  for lack of declaratory judgment jurisdiction.  As for the claims regarding ¶ 7 of the

21  Agreement, plaintiff alleges in the SAC that his "present and future property interest in fees

22  paid pursuant to contracts" he negotiated "is diminished by [Octagon's] stated intent to

23  enforce contractual provisions," and that he is also "subject to an imminent invasion or

24  injury to his legally protected interests in both pursuing his chosen profession, and earning

25  fees and commissions from negotiated contracts."  SAC ¶ 59.

26         Nevertheless, plaintiff has not alleged facts showing that the <u>future</u> sharing of fees

27  that he may or may not earn at some indeterminate date constitutes an "actual or

28  imminent" injury that is "concrete and particularized."  Because he has not shown the

United States District Court

For the Northern District of California

1   invasion of a legally protected interest, which is concrete and particularized, and actual and

2   imminent, not conjectural or hypothetical, <u>Lujan</u>, 504 U.S. at 560, he fails to show that he

3   has standing to assert the § 17200 claim.

4       Second, plaintiff cannot rely on the arbitration provision to establish his § 17200

5   claim.  He has cited no authority holding that an unconscionable arbitration provision can

6   form the basis of a § 17200 claim, and the court is unaware of any.  Unconscionability is a

7   defense to the enforcement of a contract, not an independent cause of action, unless there

8   is some statutory basis for asserting an affirmative cause of action for unconscionability.

9   <u>See</u> <u>California Grocers Ass'n v. Bank of America</u>, 22 Cal. App. 4th 205, 217 (1994); <u>see</u>

10  <u>also</u> <u>Rubio</u>, 613 F.3d at 1205.[2]

11      Third, plaintiff has failed to state a claim under § 17200 claim based on the alleged

12  violations of the Labor Code.  As stated above, Labor Code §§ 221, 229, and 300 all

13  involve "wages."  However, the "fee-sharing" provision in ¶ 7 of the Agreement does not

14  implicate "wages" payable by Octagon to plaintiff, since the payment of "wages" requires an

15  employer-employee relationship, which no longer exists here.  <u>See</u> Cal. Lab. Code § 200(a)

16  (defining "wages" as "all amounts for labor performed by <u>employees</u>") (emphasis added).

17  Since plaintiff is no longer an "employee" of Octagon, and has not been since March 11,

18  2013, and his claims with regard to "wages" do not apply to "amounts for labor" he

19  performed prior to that date, the provisions of the Labor Code relating to "wages," such as

20  § 221, § 229, and § 300, do not apply.

21      Under Labor Code § 2802, an employer is required to "indemnify" his/her employee

22  for all necessary expenditures or losses incurred by the employee in direct consequence of

23  the discharge of his or her duties, or of his or her obedience to the directions of the

24  employer."  Cal. Lab. Code § 2802(a).  Octagon, however, is not attempting to recoup

25  business expense reimbursements, as "funding the development" of plaintiff's relationships

26  ────────────────────

27  [2]  Moreover, to the extent that plaintiff's § 17200 claim is based on the allegation that
    Octagon "required" him to enter into an employment contract that contained unfair and illegal
28  provisions, such a claim is arguably time-barred, given that plaintiff signed the Agreement on
    April 22, 2008, and did not file the present action until March 12, 2013.

United States District Court

For the Northern District of California

1    with Octagon's clients as alleged does not involve business expenses incurred by plaintiff.

2         As for the claims based on Labor Code § 232 and § 7 of the NLRA, those claims are

3    moot in view of the fact that plaintiff no longer works at Octagon.  In addition, the claim

4    regarding Labor Code § 432.5 (prohibiting an employer from requiring an employee to

5    agree to an unlawful term) occurred, if at all, at the time plaintiff signed the Agreement, and

6    is therefore time-barred.

7         Finally, a PAGA claim is "fundamentally a law enforcement action designed to

8    protect the public and not to benefit private parties," wherein the aggrieved employee's

9    action "functions as a substitute for an action brought by the government itself." Arias v.

10   Super. Ct., 46 Cal. 4th 969, 986-87 (2009).  It is "a procedural statute allowing an

11   aggrieved employee to recover civil penalties – for Labor Code violations – that otherwise

12   would be sought by state labor law enforcement agencies." Amalgamated Transit Union,

13   Local 1756, AFL-CIO v. Superior Court, 46 Cal. 4th 993, 1003 (2009).

14        It is undisputed that a PAGA claim must be based on an underlying violation of the

15   Labor Code.  See Cal. Labor Code § 2699(a) ("any provision of this code that provides for a

16   civil penalty . . . for a violation of this code, may, as an alternative, be recovered through a

17   civil action brought by an aggrieved employee on behalf of himself or herself and other

18   current or former employees . . . .").  Here, plaintiff has alleged no viable claim based on

19   Labor Code violations that could give rise to a PAGA claim for civil penalties, and the

20   PAGA claim must therefore be dismissed.

21   C.   Motion to Dismiss or Transfer for Improper Venue

22        Octagon argues that the action should be dismissed or transferred for improper

23   venue, based on the provision in ¶ 17 of the Agreement that "[v]enue shall be in Fairfax

24   County, Virginia, USA."  Octagon asserts that enforcement of the forum-selection clause

25   has no bearing on the enforceability of the arbitration provision, and contends that the court

26   should determine venue first.

27        A motion to enforce a forum selection clause is treated as a motion to dismiss for

28   improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); pleadings need not

13

United States District Court

For the Northern District of California

1   be accepted as true, and facts outside the pleadings may be considered.  Doe 1 v. AOL

2   LLC, 552 F.3d 1077, 1081 (9th Cir. 2009).  However, the trial court "must draw all

3   reasonable inferences in favor of the non-moving party and resolve all factual conflicts in

4   favor of the non-moving party."  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th

5   Cir. 2003).

6        Plaintiff argues that the forum-selection clause applies only to the forum designated

7   for arbitration.  That is, he contends that the Agreement itself does not contain a forum-

8   selection clause as such, as it makes no mention of judicial venue or court proceedings, but

9   rather that it simply includes an arbitration provision that specifies a particular forum.  Thus,

10  he claims that because the parties agreed to a forum for arbitration, but not for other

11  litigation, there is no forum-selection clause that governs this action.

12       The court finds that Octagon's motion must be DENIED.  In order to find that the

13  present case should be dismissed or transferred for improper venue, the court must find

14  that the parties designated an alternative forum for civil actions.  Paragraph 17 of the

15  Agreement, which contains the purported "forum-selection clause," includes a number of

16  provisions, set forth in six sentences.

17       In the first sentence, ¶ 17 states that "[a]ll controversies arising out of or relating to

18  this Agreement . . . shall be settled by arbitration."  In the second sentence it states that the

19  decision of the arbitrator shall be "final, binding, and non-appealable."  In the third sentence

20  it states that judgment upon the arbitration award "may be entered in any court having

21  jurisdiction thereof."  In the fourth sentence, it states that all legal fees incurred in

22  connection with such arbitration shall be paid by the non-prevailing party.  In the fifth

23  sentence, it states that "[t]his Agreement shall be governed by and construed in

24  accordance with the laws of Virginia."  In the sixth sentence, it states that "[v]enue shall be

25  in Fairfax County, Virginia."

26       As with any contractual provision, the court must give the words of a forum-selection

27  clause their "common or normal meaning . . . unless circumstances show that in a

28  particular case a special meaning should be attached."  Hunt Wesson Foods, Inc. v.

14

United States District Court

For the Northern District of California

1    <u>Supreme Oil Co.</u>, 817 F.2d 75, 77 (9th Cir. 1987).  Ambiguous language is construed

2    against the drafter of the contract.  <u>Id.</u> at 78; <u>see also</u> <u>Insurance Co. of North Am. v. NNR</u>

3    <u>Aircargo Service (USA), Inc.</u>, 201 F.3d 1111, 1114 (9th Cir. 2000).

4         While it is undisputed that the Agreement provides that plaintiff and Octagon will

5    arbitrate all disputes regarding the Agreement, and also that the Agreement will be

6    construed under Virginia law, it is not clear whether the venue provision in the sixth

7    sentence of ¶ 17 applies to the arbitration only, or more broadly to any civil action involving

8    the Agreement.

9         Because the gist of ¶ 17 is that only an arbitral forum – not a judicial forum – is

10   available for the resolution of disputes "arising out or of relating to" the Agreement, it

11   appears more likely that the forum-selection clause specifies the location of the arbitration

12   only.  At best, the court can say that the provision is ambiguous, and thus, must be

13   construed against Octagon, the drafter of the Agreement.  Accordingly, the motion to

14   transfer or dismiss the present civil action for improper venue must be DENIED.

15   D.    Motions to Stay

16        Octagon seeks an order pursuant to FAA § 3 dismissing the present action or

17   staying further proceedings pending resolution of the arbitration; while plaintiff seeks an

18   order staying the arbitration pending resolution by this court of the question whether the

19   arbitration provision is enforceable.

20        The FAA was designed to promote arbitration.  <u>AT&T Mobility LLC v. Concepcion</u>,

21   131 S.Ct. 1740, 1749 (2011).  Indeed, it embodies a "national policy" favoring arbitration

22   agreements, <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006),

23   "notwithstanding any state substantive or procedural policies to the contrary," <u>Moses H.</u>

24   <u>Cone Mem. Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 24 (1983); and reflects the

25   "fundamental principle that arbitration is a matter of contract," <u>Rent-A-Center West, Inc. v.</u>

26   <u>Jackson</u>, 130 S.Ct. 2772, 2776 (2010).  The FAA "mandates that district courts shall direct

27   the parties to proceed to arbitration on issues as to which an arbitration agreement has

28   been signed." <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985).

United States District Court

For the Northern District of California

1    A party to a lawsuit pending in federal court may seek a stay of the action pending

2    arbitration of one or more issues raised by the litigation.  Wagner v. Stratton Oakmont, Inc.,

3    83 F.3d 1046 (9th Cir. 1996); see 9 U.S.C. § 3.  Alternatively, when all claims asserted in

4    the litigation are subject to arbitration, the court may choose to dismiss the action in its

5    entirety for the failure to state a claim under Rule 12(b)(6).  Sparling v. Hoffman Constr.

6    Co., 864 F.2d 635, 638 (9th Cir. 1988).

7    The basic role for courts under the FAA is to determine whether a valid agreement to

8    arbitrate exists and, if it does, whether the agreement encompasses the dispute at issue.

9    Kilgore v. KeyBank, N.A., 718 F.3d 1052, 1058 (9th Cir. 2013).  Octagon asserts that ¶ 17

10   of the Agreement constitutes a valid agreement to arbitrate that covers any claims raised

11   by plaintiff in the present action.  Plaintiff does not dispute that he signed the Agreement,

12   which includes the arbitration provision.  He contends, however, that rather than staying or

13   dismissing this action, the court should instead stay the arbitration proceeding.  He asserts

14   that under the appropriate choice-of-law analysis, California law applies, and that under

15   California law, the arbitration agreement is invalid and unenforceable.

16   The court finds that Octagon's motion must be GRANTED, and that plaintiff's motion

17   must be DENIED.  Section 2 of the FAA provides that arbitration agreements are

18   "enforceable, save upon such grounds as exist at law or in equity for the revocation of any

19   contract."  9 U.S.C. § 2.  This clause "preserves generally applicable contract defenses."

20   Conception, 131 S.Ct. at 1748; see also Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681,

21   685-87 (1996) (state law that "arose to govern issues concerning the validity, revocability,

22   and enforceability of contracts generally" remains applicable to arbitration agreements)

23   (citation and quotation omitted).[3]  Here, plaintiff contends that the arbitration provision is

24   unconscionable under California law, and is therefore unenforceable.  Octagon asserts that

25   Virginia law applies, but that the arbitration provision is enforceable regardless of which law

26   _____

27       [3] However, attacks on the validity of the contract, as distinct from attacks on the validity
of the arbitration clause itself, are to be resolved "by the arbitrator in the first instance, not by
28   a federal or state court."  Nitro-Lift Techs. LLC v. Howard, 133 S.Ct. 500, 503 (2012).

1    applies.

2          Where a federal court exercises jurisdiction over state law claims, the court "applies

3    the choice-of-law rules of the forum state." Paracor Fin., Inc. v. GE Elec. Capital Corp., 96

4    F.3d 1151, 1164 (9th Cir. 1996); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.

5    487, 496 (1941); Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000).  When an

6    agreement contains a choice-of-law provision, California courts apply the parties' choice of

7    law unless the approach set forth in Restatement (Second) of Conflict of Laws § 187

8    dictates a different result.  Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622

9    F.3d 996, 1002 (9th Cir. 2012).

10         Under the Restatement approach, the court must first determine whether the chosen

11   state has a substantial relationship to the parties or their transaction, or whether there is

12   any other reasonable basis for the parties' choice of law. Id. (citing Nedlloyd Lines B.V. v.

13   Superior Court, 3 Cal. 4th 459, 465-66 (1992)).  If either test is met, the court must

14   determine whether the chosen state's law is contrary to a fundamental policy of California.

15   Id.  If so, the court must determine whether California has a materially greater interest than

16   the chosen state in the determination of the particular issue, and if that is the case, the

17   court applies California law, notwithstanding the choice-of-law provision.  Id. at 1002-03.

18         The party advocating application of the choice-of-law provision has the burden of

19   establishing a substantial relationship between the chosen state and the contracting

20   parties. See Washington Mut. Bank v. Superior Court, 24 Cal. 4th 906, 915-16 (2001);

21   Peleg v. Neiman Marcus Group, Inc., 204 Cal. App. 4th 1425, 1447 (2012).  The burden

22   then shifts to the party opposing application to show that application would violate a

23   fundamental policy of California.  See Washington Mut. Bank, 24 Cal. 4th at 916.

24         Octagon argues that the substantial relationship test is met in this case because

25   Octagon – the only defendant – has its corporate headquarters in Virginia.  A "substantial

26   relationship" between the chosen state and the contracting parties exists if "one of the

27   parties is domiciled in the chosen state." Nedlloyd Lines, 3 Cal. 4th at 467-68.  Further, "if

28   one of the parties resides in the chosen state, the parties have a reasonable basis" for

United States District Court
For the Northern District of California

1  selecting that state.  Id.

2      In addition, Octagon contends, there is no conflict in the respective states' law on

3  arbitration.  Virginia follows a Uniform Arbitration Act, which mirrors the FAA regarding the

4  validity of an arbitration agreement.  In addition, just as in California, arbitration clauses in

5  Virginia are applied like any other contract provision, and the agreement to arbitrate must

6  be interpreted just as any other contract.  See Giordano ex rel. Estate of Brennan v. Atria

7  Assisted Living, Virginia Beach LLC, 429 F.Supp. 2d 732, 736 (E.D. Va. 2006).  Octagon

8  notes that this includes the rule that a contract may be deemed unenforceable under the

9  doctrine of unconscionability, which deals both with bargaining power and the fairness of

10  the agreement.

11      Plaintiff does not dispute this proposition, but argues that application of Virginia law

12  would violate a major public policy of California, in that the arbitration agreement conflicts

13  with California's public policy against unconscionable arbitration agreements, as set forth

14  by the California Supreme Court in Armendariz.  Plaintiff also contends that application of

15  Virginia law would violate California policy regarding the viability of covenants not to

16  compete.

17      It is apparent that California and Virginia view covenants not to compete differently.

18  In California, Business & Professions Code § 16600 prohibits any contract "by which

19  anyone is restrained from engaging in a lawful profession, trade or business of any kind."

20  Cal. Bus. & Prof. Code § 16600; see also Application Group, Inc. v. Hunter Group, Inc., 61

21  Cal. App. 4th 881, 887-901 (1998).  Section 16600 reflects California's "strong interest in

22  protecting its employees from noncompetition agreements."  Advanced Bionics v.

23  Medtronic, Inc., 29 Cal. 4th 697, 706-07 (2002).

24      By contrast, while Virginia law disfavors covenants not to compete as restraints of

25  competition, such covenants may survive if they are found not to be unreasonable.  See

26  Capital One Fin. Corp. v. Kanas, 871 F.Supp. 2d 520, 527 (E.D. Va. 2012) (citing Foti v.

27  Cook, 220 Va. 800, 805 (1980)).  Where a covenant not to compete is ancillary to an

28  employer/employee relationship (rather than to the sale of a business), the scope of

1    permissible restraint will be more limited, and the covenant will be construed favorably to

2    the employee. Id. (citing Richardson v. Paxton Co., 203 Va. 790, 795 (1962).

3        A restrictive covenant in the employment context may be enforceable, however, if

4    the employer shows that the contract is narrowly drawn to protect the employer's legitimate

5    business interests and not unduly burdensome on the employee's ability to earn a living,

6    and that it is reasonable from a perspective of public policy. See Preferred Sys. Solutions,

7    Inc. v. GP Consulting, LLC, 284 Va. 382, 392-93 (2012); Foti, 220 Va. at 805. The

8    emphasis of the Virginia Supreme Court has been on deciding each non-compete

9    agreement on its own facts. Capital One, 871 F.Supp. 2d at 530.

10       Plaintiff contends that the public policy reflected in § 16600 is sufficient to override

11   the parties' choice-of-law provision, since applying the law of Virginia would hamper

12   California's ability to protect the employment interests of its residents. Octagon asserts,

13   however, that what the court is required to evaluate is whether there is any conflict between

14   the law of California and the law of Virginia regarding the enforceability of agreements to

15   arbitrate – not the conflict in the substantive law governing the causes of action alleged in

16   the SAC. Octagon notes that both Virginia and California strongly favor arbitration and

17   have statutes that mirror the FAA, and that both recognize principles of unconscionability.

18   Thus, Octagon contends, the arbitration provision would be enforceable under the laws of

19   Virginia and under non-Armendariz California law.

20       In support of its argument that "the substantive law" is "not relevant" in the choice-of-

21   law analysis, Octagon cites a recent decision by the California Court of Appeal. See Peleg

22   v. Neiman Marcus Group, Inc., 204 Cal. App. 4th 1425, 1446 (2012). The facts in the

23   Peleg case are distinguishable from those in the present case, however, and the court is

24   not persuaded that Octagon's approach is the correct one. In Peleg, the employment

25   agreement at issue was a "Mandatory Arbitration Agreement" that the plaintiff had been

26   given at the time he was hired. The agreement was a standalone agreement that

27   addressed only one subject – arbitration. Id. at 1435-36. It included a choice-of-law

28   provision that specified that the applicable law would be the law of Texas and the FAA. Id.

1  at 1435.

2      The question for the court was whether the question of enforceability should be

3  decided by the court or by the arbitrator.  Notwithstanding the choice-of-law provision, the

4  parties did not argue that the law of a particular jurisdiction should be applied in resolving

5  the issue, and the Court of Appeal therefore determined that it would apply California law

6  "by default."  Id. at 1442.  Moreover, the court noted, the parties had relied on California law

7  in briefing the issue.  Id.  Later in the opinion, however, the court expressly considered

8  whether Texas law or the FAA was contrary to a fundamental policy of California with

9  regard to the question whether the arbitration agreement was illusory.  The court found no

10  conflict, and concluded that Texas law would govern the question whether the agreement

11  was enforceable.  Id. at 1466-67.  Thus, there was no clear ruling in the decision that could

12  assist this court in deciding whether it is precluded in its conflicts-of-law analysis from

13  considering conflicts between California law and Virginia law with regard to covenants not

14  to compete.

15      Accordingly, to the extent that the SAC alleges a viable claim under § 16600 (an

16  issue not before the court), the court finds that plaintiff has sufficiently established that

17  California has a materially greater interest in the determination of the enforceability of any

18  such non-compete agreement.  Accordingly, the court applies California law.

19      Plaintiff argues that the arbitration provision at issue in this case is unconscionable

20  and therefore unenforceable under the analysis set forth by the California Supreme Court in

21  Armendariz v. Foundation Health Psychare Servs., Inc., 24 Cal. 4th 83 (2000).  As

22  summarized by Armendariz, unconscionability has both procedural and substantive

23  elements.  Id. at 99.  Although both must appear for a court to invalidate a contract or one

24  of its individual terms, they need not be present in the same degree – "[T]he more

25  substantively oppressive the contract term, the less evidence of procedural

26  unconscionability is required to come to the conclusion that the term is unenforceable, and

27  vice versa."  Id. at 114.  Plaintiff contends that both procedural and substantive

28  unconscionability are present here.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    Procedural unconscionability "addresses the circumstances of contract negotiation

2    and formation, focusing on oppression or surprise due to unequal bargaining power."

3    Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), 55 Cal. 4th 223, 246 (2012)

4    (citing Armendariz, 24 Cal. 4th at 114); see also Roman v. Superior Court, 172 Cal. App.

5    4th 1462, 1470 (2009). "Oppression arises from an inequality of bargaining power which

6    results in no real negotiation and an absence of meaningful choice," while "[s]urprise

7    involves the extent to which the terms of the bargain are hidden in a 'prolix printed form'

8    drafted by a party in a superior bargaining position." Serpa v. California Surety

9    Investigations, Inc., 215 Cal. App. 4th 695, 703 (2013) (citations and quotations omitted);

10   see also Mercuro v. Superior Court, 96 Cal. App. 4th 167, 174 (2002) ("procedural

11   unconscionability focuses on the oppressiveness of the stronger party's conduct").

12   In analyzing procedural unconscionability, the court first focuses on whether the

13   contract was one of adhesion. Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1042 (9th

14   Cir. 2001). A contract of adhesion is "a standardized contract, which, imposed and drafted

15   by the party of superior bargaining strength, relegates to the subscribing party only the

16   opportunity to adhere to the contract or reject it." Armendariz, 24 Cal.4th at 113. Under

17   California law, a contract of adhesion has an element of procedurally unconscionability

18   because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an

19   inequality of bargaining power that result[ed] in no real negotiation and an absence of

20   meaningful choice.'" Nagrampa v. MailCoups Inc., 469 F.3d 1257, 1281 (9th Cir. 2006).

21   Plaintiff contends that the July 10, 2006 Agreement is procedurally unconscionable

22   because it is a contract of adhesion. He claims that its material terms are "standardized

23   parts of a form Octagon contract;" that other employees were presented with the same

24   provisions, including the arbitration provision; and that he had no meaningful opportunity to

25   accept or reject any of the provisions including the arbitration provision. He asserts that the

26   fact that he attended law school, was an experienced negotiator, and was represented by

27   counsel is of little consequence, because Octagon told him and his attorney that there

28   would be no negotiation of material terms. He asserts that because the Agreement

21

United States District Court

For the Northern District of California

1  (including the arbitration provision) was presented on a "take it or leave it" basis, it was per

2  se unconscionable.[4]

3      Substantive unconscionability focuses on the actual terms of the agreement and

4  evaluates whether they create an "overly harsh" or "one-sided" result, Armendariz, 24 Cal.

5  4th at 114; see also Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003) – that is, the

6  question "whether contractual provisions reallocate risks in an objectively unreasonable or

7  unexpected manner." Serpa, 215 Cal. App. 4th at 703.  Substantive unconscionability "may

8  take various forms," but typically is found in the employment context when the arbitration

9  agreement is "one-sided" in favor of the employer without sufficient justification, for

10  example, when "the employee's claims against the employer, but not the employer's claims

11  against the employee, are subject to arbitration."  Id. (citations and quotations omitted).

12      Plaintiff asserts that the arbitration provision is substantively unconscionable

13  because it is not mutual, in that Octagon can seek injunctive relief in court and without

14  showing damages, while plaintiff cannot, see Agreement ¶ 12; because it impermissibly

15  shifts attorney's fees for unsuccessful employment claims to the plaintiff, see Agreement

16  ¶ 17); because the AAA rules will require him to pay significant arbitration fees if he wants

17  to add his own claims, which he would not have to do in a judicial forum; and because it

18  requires him to pursue his claims in Virginia, an "unfavorable forum," where he claims he

19  will incur significant additional costs which in turn will "significantly diminish[ ] his rights

20  contrary to California public policy."

21      Plaintiff also contends that the selection of Virginia as the location of the arbitration

22  will shield Octagon from liability, because the arbitrator will be likely to apply Virginia law,

23  which (according to plaintiff) would effectuate a "waiver" of statutory remedies, including

24

_____

25      [4]    The court notes that the question whether the Agreement as a whole is
26  unconscionable is not presently before it.  A challenge to the validity of an agreement to
   arbitrate is to be decided by the court without reference to the larger contract.  Rent-A-Center,
27  130 S.Ct. at 2778.  That is, the "'arbitration provision is severable from the remainder of the
   contract,' . . . and its validity is subject to initial court determination; but the validity of the
28  remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide."
   Nitro-Lift Techs., 133 S.Ct. at 503 (citations and quotations omitted).

United States District Court

For the Northern District of California

1  remedies under Business & Professions Code § 16600 and the California Labor Code.  He

2  argues that his PAGA and "wage" claims are not arbitrable.  He contends that whatever the

3  court decides with regard to the arbitration claims, the PAGA claims should remain before

4  this court, and that to avoid duplication, all the claims should remain here.

5      In response, Octagon contends that Armendariz is inapplicable here, because the

6  analysis extends only to the court's review of unconscionability in mandatory employment

7  arbitration agreements involving statutory anti-discrimination claims.  Here, Octagon

8  asserts, the claims alleged do not involve statutory anti-discrimination claims.  In support,

9  Octagon cites Giulano v. Inland Island Personnel, Inc., 149 Cal. App. 4th 1276, 1290-91

10 (2007), where the court held that Armendariz did not apply to breach of contract claims for

11 a multimillion-dollar bonus and severance payment because such claims are

12 distinguishable from unwaivable statutory claims for federally mandated overtime and

13 minimum wage payments; and Parker v. McGaw, 125 Cal. App. 4th 1494, 1507 (2005),

14 where the court held that Armendariz did not apply where the plaintiff's claims were not

15 brought under FEHA, the plaintiff had the opportunity to negotiate the terms of employment,

16 and the plaintiff earned a high annual salary and was also an attorney.

17     Octagon contends that because there is no other public policy that prevents the

18 application of Virginia law on the issue of the enforceability of the arbitration provision,

19 Virginia law applies, and argues that the arbitration provision is valid and enforceable under

20 Virginia law.  Octagon also argues, however, that the arbitration provision is enforceable

21 under California law.  Octagon apparently concedes that there is some degree of

22 procedural unconscionability in the arbitration provision, but also notes that the evidence

23 shows that plaintiff was given the opportunity to negotiate the Agreement's provisions with

24 the advice of counsel, and confirmed that he did, in fact, have an attorney review the

25 Agreement before he signed it.  He assented to the Agreement by signing it on August 7,

26 2006, and initialed every page, including the two pages on which the arbitration provision is

27 found.  He also worked under the Agreement for several years.

28     Octagon contends that as a sports agent, plaintiff is an experienced negotiator with

1   years of experience, and was hired by Octagon in part because he had substantial

2   experience in this area.  Indeed, Octagon contends, sports agents in plaintiff's position are

3   required by the National Football League Players Association to be certified as Contract

4   Advisors pursuant to the NFLPA regulations.  Thus, Octagon argues, there is no evidence

5   of inequality in bargaining power, such that the arbitration provision should be found to be

6   unenforceable.

7   Adhesion contracts in the employment context "typically contain some aspects of

8   procedural unconscionability."  Serpa, 215 Cal. App. 4th at 704 (citing Armendariz, 24 Cal.

9   4th at 115).  Here, however, the Agreement (which includes the arbitration provision)

10   provides that plaintiff "acknowledges that the provisions of this Agreement were discussed

11   in principle at the time the offer [of employment] was made," and that he "stated [his]

12   consent to the type of restrictions set forth in this Agreement as a condition of [his]

13   employment."  Agreement ¶ 1.  In addition, plaintiff "acknowledges that he has been

14   afforded the opportunity to have this Agreement reviewed on his behalf by legal counsel of

15   his own choosing and at this own expense . . . ."  Agreement ¶ 18.  This differs from the

16   more typical adhesive employment agreement, such as the agreement at issue in Serpa,

17   which provided that "by accepting or continuing in employment," the employee agreed to

18   the terms of the arbitration agreement.  Serpa, 215 Cal. App. 4th at 704.

19   Moreover, Octagon has presented evidence showing not only that plaintiff had the

20   opportunity to negotiate the terms of the Agreement, but also that he took advantage of that

21   opportunity.  There is no evidence with regard to any negotiation of the arbitration

22   provision, but given that the adhesive aspect of an agreement is not dispositive, see

23   Roman, 172 Cal. App. 4th at 1471 & n.2; and given that there is no other indication of

24   oppression or surprise (such as grossly unequal bargaining power, or the concealment by

25   Octagon of the terms of the agreement in a "prolix printed form"), the court concludes that

26   the degree of procedural unconscionability is low.  See, e.g., Miguel v. JPMorgan Chase

27   Bank, N.A., 2013 WL 452418 at *6 (C.D. Cal. Feb. 5, 2013) (citing Lagatree v. Luce,

28   Forward, Hamilton & Scripps, 74 Cal. App. 4th 1105, 1127 (1999); Hodsdon v. DirecTV,

United States District Court

For the Northern District of California

1   LLC, 2012 WL 5464615 at *5 (N.D. Cal. Nov. 8, 2012) (citing Gatton v. T-Mobile USA, Inc.,

2   152 Cal. App. 4th 571, 585 (2007)).

3       Plaintiff also contends that the arbitration provision is procedurally unconscionable

4   because it provides that the AAA rules will apply, but fails to attach those rules to the

5   Agreement.  It is true that some courts have held that the failure to provide arbitration rules

6   can be deemed procedurally unconscionable, see Sparks v. Vista Del Mar Child and Family

7   Servs., 207 Cal. App. 4th 1511, 1523 (2012); Trivedi v. Curexco Technology Corp., 189

8   Cal. App. 4th 387, 393 n.4 (2010); Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406-07

9   (2003).  However, other cases have held that procedural unconscionability can be avoided

10  if the arbitration rules are incorporated into the contract by reference, such incorporation is

11  clear, and the rules are readily available.  See, e.g., Ulbrich v. Overstock.Com, Inc., 2012

12  WL 3631498, at *6 (N.D. Cal. Aug.15, 2012); see also Medlin Ins. Agency v. QBE Ins.

13  Corp., 2012 WL 2499952, at *5 (E.D. Cal. June 27, 2012) (failure to provide arbitration

14  rules is not, itself, enough to establish procedural unconscionability).

15      Here, the arbitration provision incorporates the AAA rules clearly and explicitly,

16  stating that "[a]ll controversies or claims . . . shall be settled by arbitration in accordance

17  with the Rules of the American Arbitration Association."  Agreement ¶ 17.  Plaintiff has not

18  attempted to argue that the AAA rules are not, or have not been, available.  Most of

19  plaintiff's argument consists of speculation regarding possible negative consequences were

20  he compelled to proceed under the AAA rules governing arbitration of large commercial

21  disputes.

22      Octagon did not engage in the type of conduct necessary to find a "high degree" of

23  procedural unconscionability.  Because plaintiff received some (though not all) of the

24  concessions he wanted through the negotiation process, the Agreement cannot be

25  considered a "standardized form contract" presented with only the opportunity to take it or

26  leave it.  There is no evidence that plaintiff was threatened or bullied into signing the

27  agreement.  See Mercuro, 96 Cal. App. 4th at 175.

28      The evidence shows that plaintiff and Octagon engaged in negotiation over a period

United States District Court
For the Northern District of California

1  of days, and that plaintiff consulted with legal counsel during that process.  Plaintiff does

2  not claim he felt oppressed when he signed the Agreement.  Thus, the court finds that the

3  arbitration agreement must be enforced unless the degree of substantive unconscionability

4  is high.  See Ajamian v. CantorCO2e,  203 Cal. App. 4th 771, 796 (2012); Dotson v.

5  Amgen, Inc., 181 Cal. App. 4th 975, 981-82 (2010); see also Roman, 172 Cal. App. 4th at

6  1471 n.2 ("[w]hen bargaining power is not grossly unequal and reasonable alternatives

7  exist, oppression typically inherent in adhesion contracts is minimal").

8          The court finds that plaintiff has failed to make that showing.  He has not shown that

9  the arbitration provision requires Octagon (but not plaintiff) to arbitrate claims, or that it

10  imposes a shorter statute of limitations than is available under state law.  See Martinez v.

11  Master Protection Corp., 118 Cal. App. 4th 107, 114-18 (2004).  Nor is there any showing

12  that the arbitration agreement exempts any particular type of claim from arbitration, as it

13  requires arbitration of "[a]ll controversies or claims" relating to the Agreement.  The

14  arbitration agreement places no limitation on discovery, and plaintiff has not demonstrated

15  that he is financially or physically unable to travel to Virginia for the arbitration.

16          With regard to the "loser pays" attorney's fees provision, the claim submitted to

17  arbitration is based on the enforceability of a contract.  In Pokorny v. Quixtar, Inc., 601 F.3d

18  987 (9th Cir. 2010), the case on which plaintiff relies, the Ninth Circuit found a "loser pays"

19  provision in the arbitration agreement to be substantively unconscionable because it

20  required the losing party to bear all costs of the arbitration, including the prevailing party's

21  attorney's fees.  See id. at 1004-05.  Here, however, the arbitration agreement requires

22  only that the losing party pay the "legal fees incurred in connection with such arbitration."

23          Octagon asserts that under California Civil Code § 1717, the parties are entitled to

24  attorney's fees if there is an appropriate contractual provision, and thus, plaintiff would be

25  required to pay attorney's fees if he lost in litigation, and will not receive a less favorable

26  treatment in the arbitration.  However, the Agreement does not include any provision

27  requiring the losing party in litigation to pay attorney's fees – but only a requirement with

28  regard to arbitration.  Accordingly, the court finds that because this "loser pays" provision

seeks to impose a greater burden on the non-prevailing party in arbitration than it would on the same party in litigation, it is substantively unconscionable.

With regard to the provision in ¶ 12 that entitles Octagon to seek an injunction to stop a breach of the Agreement by plaintiff without the necessity of proving damages, the court agrees with plaintiff that (to the extent this provision is applicable to arbitration) it renders the agreement one-sided, assuming its intent is to preclude plaintiff from seeking similar relief in appropriate circumstances.

As to these last two provisions, however, California law allows the court to sever any unconscionable provisions so long as they are "merely collateral to the main purpose of the arbitration agreement." See Grabowski v. Robinson, 817 F.Supp. 2d 1159, 1179 (S.D. Cal. 2011) (citing Armendariz, 24 Cal. 4th at 124); see also Pokorny, 601 F.3d at 1005. The court finds that the central purpose of the agreement is not "tainted with illegality," and that the two provisions described above can easily be severed from the agreement.

### CONCLUSION

In accordance with the foregoing, the court hereby GRANTS Octagon's motion to dismiss the first through third causes of action for lack of subject matter jurisdiction; GRANTS Octagon's motion to dismiss the sixth and seventh causes of action for failure to state a claim; DENIES Octagon's motion to dismiss or transfer for improper venue; GRANTS Octagon's motion stay this action pending resolution of the arbitration; and DENIES plaintiff's motion to stay the arbitration.

This proceeding is hereby STAYED pending arbitration. The parties shall notify the court immediately upon a determination of the arbitration demand.

**IT IS SO ORDERED.**

Dated: September 12, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge